UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>PACTIV LLC et al.,<br><br>    Defendants.<br><br>---<br><br>Jack Rodriguez,<br><br>    Plaintiff,<br><br>v.<br><br>PACTIV LLC et al.,<br><br>    Defendants. | Case No. 5:20-cv-01691-SB-KK<br><br>Case No. 5:21-cv-00841-SB-KK<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS [DKT. NOS. 72, 74] |

  In these related class actions, Plaintiffs Mark Wilson and Jack Rodriguez alleged wage and hour violations against Defendant Pactiv LLC on behalf of themselves and other employees. The parties reached a settlement, which the Court preliminarily approved. Dkt. No. 69.[1] Plaintiffs now move for final approval of the parties' settlement agreement, attorneys' fees and costs, and class

---

[1] The citations in this Order refer to the *Wilson* docket, unless otherwise noted.

1

representative enhancement awards. Dkt. Nos. 72, 74.[2]  No Class Member[3] objected to the settlement.  Dkt. No. 74-2 ¶ 7.  For the reasons stated below, Plaintiffs' motion for final approval of the class action settlement (Dkt. No. 74) is GRANTED and Plaintiffs' motion for attorney's fees, costs, and class representative enhancement payments (Dkt. No. 72) is GRANTED IN PART.

I.

This settlement pertains to both class claims and claims brought under California's Private Attorneys General Act (PAGA), which allows aggrieved employees to sue to recover civil penalties that ordinarily would be collected by the state Labor and Workforce Development Agency (LWDA).  Cal. Lab. Code § 2698 et seq.  Penalties that private persons recover under PAGA are distributed according to a statutory formula, with 75% going to LWDA and 25% going to aggrieved employees.  Cal. Lab. Code § 2699(i).

The settlement agreement defines the "Settlement Class" as "all persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2016 to" July 1, 2022.  Dkt. No. 60, Ex. 1 (Settlement Agreement) ¶ 5.  "The Settlement Class will include any Class Member who settled or released any of the claims covered by this Settlement."  Id.  The time period from May 29, 2016 to July 1, 2022 is the "Class Period."  Id. ¶ 6.  "PAGA Members" are "all persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2019 to" July 1, 2022.  Id. ¶ 17.  This time period is the "PAGA Period."  Id. ¶ 18.

---

[2] Under the Court's Civil Standing Order, a party may not use "more than one footnote for every three pages in any brief."  Civil Standing Order, at 9–10.  Plaintiffs previously were warned for violating this order, Dkt. No. 69 at 1 n.2, and yet they have repeated this violation in this motion.  While the Court realizes the violations were not deliberate (as there was no incentive here to use excessive footnotes to avoid page limitations), it cannot continue to countenance violations in the face of warnings.  *Any further failure to adhere to court rules and orders—including in any future case—may result in sanctions*.

[3] Capitalized terms not defined herein have the meaning provided in the Settlement Agreement, Dkt. No. 60, Ex. 1.

Under the agreement's terms, Defendant agrees to make a nonreversionary payment of $500,000 (Gross Settlement Amount), which is to be allocated in the following manner:

- $166,667 for attorneys' fees;[4]

- $50,000 for attorneys' costs;

- $19,000 for Settlement Administrator CPT Group, Inc.;

- $20,000 for Plaintiffs ($10,000 each) as class representative enhancement payments;

- $40,000 to settle PAGA Members' PAGA claims, with $30,000 being paid to LWDA and the $10,000 remaining to be allocated to PAGA Members in proportion to the number of Pay Periods worked within the PAGA Period; and

- the remainder to a Net Settlement Fund, which will be allocated to Class Members on a pro-rata basis based on the number of Pay Periods a Class Member worked during the Class Period.

*See id*. ¶¶ 32–40, Dkt. No. 74-2 ¶ 10. If the Court approves the agreed-upon fees, costs, and class representative enhancement payments, the Net Settlement Fund will contain $204,333, which is to be distributed to the 2,024 Class Members who did not opt out of the settlement. Dkt. No. 74-2 ¶ 8. The average payment to Class Members from the Net Settlement Fund is estimated to be $100.95. *Id*.

In general, the agreement releases Defendant and its various affiliates from liability to Class Members who do not opt out of the settlement for wage and hour violations arising during the Class Period. *See* Settlement Agreement ¶¶ 21, 25, 27, 49, 50. The agreement also releases Defendant and its various affiliates from liability to PAGA Members for any claims that could have been brought under PAGA arising during the PAGA Period. *Id*. ¶¶ 26, 27, 51.

---

[4] Capstone Law APC (Wilson's counsel) and Wilshire Law Firm (Rodriguez's counsel) have a separate fee-splitting agreement. Dkt. No. 74-3 ¶ 22.

II.

The Court conditionally certified the class for settlement purposes. Dkt. No. 69 at 6. The Court evaluated the parties' proposed procedures for noticing Class Members, which included mailing a copy of the Court-approved notice to all Class Members. *Id*. at 9. On July 20, 2022, defense counsel provided the Settlement Administrator with a mailing list that included each Class Member's full name, most recent mailing address, and other information needed to calculate settlement payments. Dkt. No. 74-2 ¶ 3. The Settlement Administrator then updated the address list by utilizing the U.S. Postal Service's National Change of Address Database and mailed the notice to all 2,028 Class Members. *Id*. ¶ 4. Of the 2,028 notices that were mailed, 60 were returned to sender. *Id*. ¶ 5. The Settlement Administrator re-mailed 48 notices after conducting skip tracing to determine a better mailing address. *Id*. The Settlement Administrator was unable to deliver 12 notices to Class Members. *Id*. The Court finds that this notice complies with the requirements of Rule 23 and due process.

Defendant provided notice of the settlement to the appropriate state and federal agencies on November 1, 2022. Dkt. No. 78. The parties indicate that no governmental agency has substantively responded to the settlement in the 90 days following notice. Dkt. No. 82. The Court finds that the governmental notice requirements of the Class Action Fairness act are satisfied. 28 U.S.C. § 1715.

No Class Member has objected to the settlement. Dkt. No. 74-2 ¶ 7. Four Class Members opted out from participating in the settlement, constituting less than 0.20 percent of the Settlement Class. *Id*. ¶ 6.

III.

A.

Plaintiffs seek final approval of the class settlement. Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)). The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent

> of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. 17-cv-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In addition to explicit collusion, a court should look for "more subtle signs" that class counsel have acted in their own self-interest or only in the interest of certain class members, such as: (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) payment of attorneys' fees separate and apart from class funds; or (3) an arrangement reverting any fees not awarded to the defendant rather than the class fund. *Id*.

B.

First, the Court evaluates together the strength of Plaintiffs' case, the risk of continued litigation, and the settlement amount. To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation. *In re Mego*, 213 F.3d at 458–59. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Under the proposed settlement, Class Members will receive an average of $100.95. Dkt. No. 74-2 ¶ 8. The highest payment will be $224.68. *Id*. This case has been ongoing for more than two years and its path forward is uncertain. The Court denied Plaintiffs' motion for class certification, which sought to certify five classes of

employees who allegedly experienced different wage and hour violations. Dkt. No. 46. The Court found that the proposed classes did not satisfy Rule 23(b)(3)'s predominance and commonality requirements. *Id*. at 9–15. An immediate recovery for Class Members is preferable to prolonged risk and expense of further litigation. Therefore, the settlement of their claims for an average of $100.95 per Class Member is fair and adequate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

Second, the Court examines the extent of discovery completed and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The settlement is the product of extensive discovery. Prior to filing *Wilson*, Wilson's counsel conducted a preliminary investigation. Dkt. No. 74-1 ¶ 7. Defendant produced hundreds of pages of documents, including the wage and hour policies directly at issue in these cases. *Id*. ¶ 9, Dkt. No. 74-3 ¶ 12. Wilson's counsel also interviewed and obtained declarations from Class Members. Dkt. No. 74-1 ¶ 10. The *Wilson* parties took or defended over 30 depositions. *Id*. ¶ 11. After the Court denied class certification, the parties engaged in a formal mediation that resulted in this settlement. Dkt. No. 74-3 ¶ 16. The Court finds that there was sufficient discovery and an arms-length negotiation. Accordingly, the work completed to date favors settlement.

Third, the Court looks at the experience and views of Class Counsel. Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Plaintiffs are represented by experienced counsel at two different law firms. *See* Dkt. Nos. 74-1 ¶¶ 13–20, 74-3 ¶¶ 43–51. Class Counsel have worked on this case for two years and, as noted above, conducted discovery sufficient to make their views on settlement informed. Class Counsel support approval. Dkt. Nos. 74-1 ¶ 12, 74-3 ¶¶ 25, 28, 31. Counsel's agreement that the settlement is favorable to the class weighs in favor of approval.

Fourth, the Court considers the presence of a governmental participant. Plaintiff sought to enforce PAGA claims on behalf of the state and affected employees, and the settlement includes a $30,000 payment to LWDA. Accordingly, this factor weighs in favor of approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (PAGA payment to LWDA favors approving the settlement).

Finally, the Court examines the reactions of Class Members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529. As noted above, no Class Member has objected to the settlement. Dkt. No. 74-2 ¶ 7. Four Class Members opted out from participating in the settlement, constituting less than 0.20 percent of the Settlement Class. *Id*. ¶ 6. Class Members overwhelmingly support the settlement, which warrants approval.

C.

The Court turns to the issue of whether the settlement is collusive. The proposed settlement allocates one-third of the gross settlement to attorneys' fees and an additional 10% to costs. An allocation of large fees to class counsel juxtaposed against a relatively small payout to class members may be a "warning sign" of collusion. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258–59 (N.D. Cal. 2015). The Court finds that the settlement is not a product of collusion between the parties. As discussed *infra*, Class Counsel's request for attorney's fees is reasonable as a percentage of the gross settlement and is supported by a cross-check against Counsel's lodestar value. Nor are the attorneys' fees and incentive awards provided "separately from the class settlement" but instead made from the gross settlement amount, which is not suggestive of collusion. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *see also Rodriguez*, 563 F.3d at 961 n.5 (noting that fees and awards made from the settlement fund instead of in addition to it did not "signal the possibility of collusion because, by agreeing to a sum certain, [the defendants] were acting consistent with their own interests in minimizing liability"). The parties negotiated the settlement with a neutral mediator, which further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948. As noted, the settlement contemplates Defendant's nonreversionary payment into the Gross Settlement Fund. Settlement Agreement ¶¶ 38–39. Finally, there is no evidence of explicit collusion here, and Class Members appear to be receiving a favorable outcome to which there are no objections. Accordingly, the Court is satisfied that the settlement did not result from collusion between the negotiating parties.

\*   \*   \*

Based on its analysis of the factors for final approval, the Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818. The Court therefore **GRANTS** Plaintiffs' motion for final approval of the class action settlement.

IV.

Plaintiffs also seek an award of attorneys' fees in the amount of $166,667, an award of costs in the amount of $50,000, and class representative enhancement payments totaling $20,000. The Court addresses each of these in turn.

A.

First, the Court considers the appropriate attorneys' fees to award. Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class" and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM, 2008 WL 8150856, at *8 (C.D. Cal. July 21, 2008) (cleaned up). The percentage method is sometimes preferred, particularly if the use of the lodestar method would endorse a "collusive settlement[] that exchange[d] a low recovery for a high fee award." *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, No. 06-cv-7289-MHP, 2010 WL 956896, at *2 (N.D. Cal. Mar. 12, 2010) (internal quotation marks omitted) (quoting *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 30 (2000)). California authorizes use of the percentage method in common fund cases. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–04 (2016) (*Laffitte I*).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. California courts do not have a definitive benchmark, but some "California courts have also found this guideline reasonable in class actions." *Schulz v. Jeppesen Sanderson, Inc.*, 27 Cal. App. 5th 1167, 1176 (2018) (collecting cases). The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Courts consider the following factors in determining whether the requested adjustment is reasonable: "(1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the

8

fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

These factors support an attorneys' fee award of $166,667 in this case, which constitutes one-third of the Gross Settlement Amount. Class Counsel obtained recovery for Class Members despite substantial risks associated with allowing the case to proceed in litigation. Counsel has significant experience in litigating class actions and brought this experience to bear to achieve a positive outcome for Class Members. *See* Dkt. Nos. 74-1 ¶¶ 13–20, 74-3 ¶¶ 43–51. Courts in the Ninth Circuit commonly find acceptable requests for attorneys' fees that represent 20% to 33.33% of the total settlement. *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 3412725, at *8–9 (E.D. Cal. June 22, 2020) (collecting cases); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450–51 (E.D. Cal. 2013) (finding that a wage and hour class action presents "sufficient reason" to award class counsel one-third of the settlement fund due to "the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"). California courts are in accord. *See Laffitte v. Robert Half Int'l, Inc.*, 231 Cal. App. 4th 860, 878 (2014) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits), *aff'd Lafitte I*.

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa*, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours"). The lodestar is calculated by multiplying the hours reasonably expended by a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.

Counsel indicate that they and their paralegals have spent 1,331.1 hours litigating this case. Dkt. Nos. 72-1 ¶ 13, 72-2 ¶ 25. They litigated this case for almost two years and devoted time to discovery, motions practice, mediation, and settlement negotiations. The Court therefore finds that the number of hours requested is reasonable. *See Barbosa*, 297 F.R.D. at 451–52 (finding over 900 expended hours reasonable given "the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the Settlement Class, the mediation preparation required, and motion practice with respect to the Settlement Agreement"). Dividing the requested attorneys' fees of $166,667 by

9

the number of hours Class Counsel and their paralegals spent on this case yields an overall blended rate of $125.21.

Class Counsel submit tables indicating the attorneys and support staff who worked on these cases, their hourly rate, the number of hours billed to these cases, and the total fees associated with the work. Dkt. Nos. 72-1 ¶ 13, 72-2 ¶ 25. Some of the hourly rates charged by these lawyers appear to be at or above the high end of the market range in the Central District. Counsel do not cite any case in which Partners and Senior Counsel have been permitted to bill at a rate of $950 per hour, let alone one involving wage and hour claims that permits such rates. *See* Dkt. No. 72-1 ¶ 14. This rate is at the upper end or beyond the market rate for wage-and-hour class actions. *See, e.g.*, *Gomez v. USF Reddaway Inc.*, No. 16-cv-05572-JAK, 2020 WL 10964603, at *8 (C.D. Cal. Sept. 21, 2020) (finding rates between $450 and $850 to be reasonable for wage-and-hour attorneys in the Central District); *Ayala v. U.S. Xpress Enterprises, Inc.*, No. 16-cv-137-GW, 2019 WL 1581395, at *3 (C.D. Cal. Feb. 13, 2019) (approving rates between $600 and $795). Nonetheless, even if the Court were to reduce these rates to more reasonable levels, the lodestar value would still exceed Class Counsel's request of $166,667 in attorneys' fees.

Accordingly, the Court finds that the requested fees are reasonable under the percentage method and supported by a lodestar cross-check.

Plaintiffs also request $50,000 in costs. These costs include court and filing fees; court reporting, transcript, and deposition fees; delivery and messenger fees; expert witness fees; mediation fees; legal research fees; postage and mailing; travel costs; and fees associated with a call center for Defendant's employees to call into to discuss their experiences working for Defendant. Dkt. Nos. 72-1 ¶ 17, 72-2 ¶ 32. These are traditional litigation costs in wage-and-hour class actions. Class Counsel documented $67,967.73 in costs, but only request an award of $50,000. Approximately 40% of the documented costs consist of court reporter, transcript, and deposition expenses. *See* Dkt. No. 72-1 ¶ 17. In light of the fact that this case has involved more than 30 depositions, the high costs associated with this line item are justified. Dkt. No. 72-1 ¶ 11. The other costs Class Counsel report are adequate given that this case is a class action that has been ongoing for two years. The Court finds that the requested costs are reasonable.

B.

Finally, Plaintiffs seek $20,000 as Class Representative Enhancement Payments, $10,000 each to Wilson and Rodriguez. Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266–67. Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Stuart v. Radioshack Corp.*, No. 07-cv-4499-EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

The Court expressed its concern about the appropriateness of Plaintiffs' award, which is double the amount considered presumptively reasonable in the Ninth Circuit, given their stated level of involvement in these cases, and noted that it would take a closer look on final approval. Dkt. No. 69 at 7–8. Upon review, the record in this case justifies granting in part Plaintiffs' request for class representative awards. Rodriguez claims to have spent approximately 40 hours and Wilson claims to have spent between 40 and 50 hours litigating this case. Dkt. Nos. 72-3 ¶ 8, 72-4 ¶ 14. Rodriguez mostly spoke with his attorneys on the phone and spent approximately two hours discussing the terms of the Settlement Agreement. Dkt. No. 72-3 ¶¶ 6, 8. Wilson was more involved in this litigation, which included discussing the factual bases for the claims asserted with his attorneys, reviewing a draft complaint, working on discovery responses, getting deposed, and assisting his attorneys in seeking class certification. Dkt. No 72-4 ¶¶ 4, 5, 10, 11, 12. A $10,000 award is unjustified considering the number of hours Plaintiffs spent working on this case. *See Bellinghausen*, 306 F.R.D. at 267 (finding a $15,000 award excessive and awarding $10,000 to a plaintiff who spent 73 hours on the case over 21 months and lost job opportunities because of his role as class representative). Moreover, although Plaintiffs incurred some employment

11

risk by suing Defendant, they have not demonstrated that the risk is substantial or has materialized. However, the Court is mindful that Plaintiffs are providing Defendant with a general release that is substantially broader than the release that applies to other Class Members. Settlement Agreement ¶ 67. Accordingly, in light of the work each Plaintiff performed in this matter, the Court will award $7,500 to Wilson and $5,000 to Rodriguez for the risks they undertook to litigate this case, the time they spent doing so, and the broader release provision that applies to them under the terms of the settlement.

V.

For the foregoing reasons, Plaintiffs' unopposed motion for final approval of their class action settlement (Dkt. No. 74) is GRANTED. Plaintiffs' unopposed motion for attorneys' fees, attorneys' costs, and class representative enhancement awards (Dkt. No. 72) is GRANTED in part. The Court awards $166,667 in attorneys' fees to Class Counsel, $50,000 in attorneys' costs to Class Counsel, $7,500 to Wilson, and $5,000 to Rodriguez.

IT IS SO ORDERED.

Date: February 17, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge